UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH HORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 6796 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| TIMOTHY SIMMONS and MORGAN SERVICES, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Kenneth Horgan ("Plaintiff") brings this action alleging employment discrimination and invasion of privacy against Timothy Simmons ("Simmons") and Morgan Services, Inc. ("Morgan") (collectively, "Defendants"). (R. 1, Compl.) Plaintiff claims that Defendants unlawfully terminated him because of his disability and impermissibly inquired as to his disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (R. 1, Compl. ¶¶ 21, 25-26.) In addition, Plaintiff claims that Defendants invaded his privacy under Illinois state law. (*Id.* ¶ 31.) Currently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 13, Defs.' Mot. to Dismiss.) For the reasons stated below, the motion is granted in part and denied in part.

### RELEVANT FACTS

Plaintiff has been diagnosed as HIV positive for the past ten years, but kept his status confidential, disclosing his medical condition only to his close friends. (R. 1, Compl. ¶¶ 8-9.) In February 2001, he began working for Morgan, a linen and uniform rental services company, as a

sales manager in Los Angeles. (*Id.* ¶¶ 5-6.) In January 2008, Defendants promoted him to General Manager of the Chicago facility. (*Id.* ¶ 5.) Plaintiff claims that his HIV positive status never interfered with his ability to perform the essential functions of his job and that he "has always met or exceeded Morgan's legitimate expectations." (*Id.* ¶¶ 10-11.) Specifically, in 2009, Plaintiff claims he brought in a lucrative account with the company's "biggest customer in the country." (*Id.* ¶ 11.)

Simmons is Morgan's president and was Plaintiff's supervisor in Chicago. (*Id.* ¶ 7.) On July 15, 2009, Plaintiff alleges that Simmons asked to meet with him for what Simmons termed a "social visit." (*Id.* ¶ 12.) During their visit, Plaintiff alleges that Simmons "told plaintiff that he was really worried about him." (*Id.* ¶ 13.) When Plaintiff responded by discussing his work performance, Plaintiff claims that Simmons cut him off saying "this is not about results." (*Id.*) Plaintiff alleges that Simmons then "demanded" to know what was going on with him, telling Plaintiff that "if there was something medical going on, [he] needed to know." (*Id.*) Plaintiff insisted that there was nothing that affected his ability to work. (*Id.*) However, Plaintiff claims that Simmons "continued to insist there was something physical or mental that was affecting [Plaintiff]." (*Id.* ¶ 14.) Plaintiff claims he was "compelled to tell Simmons that he was HIV positive," but he assured Simmons that his status did not affect his ability to do his job. (*Id.*)

Plaintiff alleges that Simmons then asked him about his prognosis. (*Id.* ¶ 15.) Plaintiff responded that "he had been HIV positive for a long time and that the condition was under control and that his T-cell count was over 300." (*Id.*) Next, Plaintiff alleges that Simmons asked

2

"what would happen if his T-cell count went below 200," and Plaintiff replied that he would then have AIDS. (*Id.*) After urging Plaintiff to inform his family about his condition, Plaintiff alleges that Simmons asked him "how he could ever perform his job with his HIV positive condition and how he could continue to work with a terminal illness." (*Id.* ¶ 16.) Additionally, Plaintiff claims that Simmons told him "that a General Manager needs to be respected by the employees and have the ability to lead," and indicated that he "did not know how [Plaintiff] could lead if the employees knew about his condition." (*Id.* ¶ 17.)

Simmons allegedly ended the meeting by telling Plaintiff that he needed "to recover" and that he should "go on vacation" and "leave the plant immediately." (*Id.* ¶¶ 17-18.) Simmons then told Plaintiff that he would discuss the situation with Morgan's owner. (*Id.* ¶ 18.) The next day, Plaintiff alleges that he received a copy of an email sent to all general managers and corporate staff indicating that "effective immediately" Plaintiff was "no longer a member of Morgan []." (*Id.* ¶ 19.)

## PROCEDURAL HISTORY

On October 28, 2009, Plaintiff filed his complaint in this Court. (R.1, Compl.) The complaint raises three claims: Count I alleges that Defendants terminated Plaintiff because of his disability in violation of the ADA; Count II alleges that Simmons' July 15, 2009 questioning was an impermissible medical inquiry in violation of the ADA; and Count III alleges a state law claim for invasion of privacy. (*Id.*) On November 25, 2009, Defendants moved to dismiss. (R. 13, Defs.' Mot. Dismiss.) Defendants argue that Plaintiff is "unable to show a protected disability"

3

under the ADA and that the medical-related inquiry was not prohibited because it was "job-related and consistent with business necessity." (*Id.* at 2-3.) Further, Defendants argue that the complaint "lack[s] the necessary elements" to establish an invasion of privacy under Illinois law. (*Id.* at 3.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. FOP Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court construes the complaint "in the light most favorable to the nonmoving party, accept[ing] well-pleaded facts as true, and draw[ing] all inferences in her favor." *Regar Dev. LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). To survive a motion to dismiss, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the 'speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (emphasis in original).

## ANALYSIS

### I. ADA Claims

#### A. Count I - Termination on the Basis of Disability

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of

4

employment." 42 U.S.C. § 12112(a). "To prevail on an ADA claim, the plaintiff must show (1) he is disabled; (2) he is qualified to perform the essential function of the job with or without accommodation; and (3) he suffered an adverse employment action because of his disability." *EEOC v. Lee's Log Cabin*, 546 F.3d 438, 442 (7th Cir. 2008), *amended by, reh'g en banc denied by*, 554 F.3d 1102 (7th Cir. 2009) (internal citation omitted). The ADA defines "disability," with respect to an individual, as: (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff alleges that he was terminated on the basis of his disability: being HIV positive. (R. 1, Compl.; *see also* R. 21, Pl.'s Resp. at 3.) Although Defendants acknowledge that being HIV positive is a physical impairment, they argue that Plaintiff has not pled "a limitation of a major life activity," and thus fails to state a claim of disability under the ADA. (R. 18, Defs.' Mem. at 10.)

Effective January 1, 2009, Congress amended the ADA to "[reinstate] a broad scope of protection." *See* ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat 3553 (2008). Specifically, Congress found that the Supreme Court had "narrowed" the protection intended to be afforded by the ADA, and through the ADAAA rejected the holdings of *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) and *Toyota Motor Manufacturing,*

5

*Kentucky, Inc., v. Williams*, 534 U.S. 184 (2002).[1] *Id.* Although the ADAAA left the ADA's three-category definition of "disability" intact, significant changes were made to how these categories were interpreted. *Id.* at 3555-56.

As relevant to this case, the ADAAA clarified that the operation of "major bodily functions," including "functions of the immune system," constitute major life activities under the ADA's first definition of disability. *Id.* at 3555. In addition, "an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." *Id.* Congress also instructed that "[t]he term 'substantially limits' shall be interpreted consistently with the findings and purposes of the [ADAAA]." *Id.* Noting that courts had "created an inappropriately high level of limitation," the ADAAA states that "it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations . . . ." *Id.* at 3554. Therefore, the "question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Id.*

Defendants claim that even with the additional language of the ADAAA, Plaintiff fails to

---

[1] In *Sutton*, the Supreme Court held that a "disability" under the ADA had to be determined with regard to the corrective measures that were available. 527 U.S. at 482-83. Further, the Court held that a person whose physical or mental impairment was corrected by medication or other measures did not have an impairment that substantially limited a major life activity. *Id.* Subsequently, in *Williams* the Court held that the terms "substantially" and "major" "need to be interpreted strictly to create a demanding standard for qualifying as disabled" and that to be substantially limited in performing a major life activity, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." 534 U.S. at 197-98.

plead a disability sufficient to state an actionable ADA claim. (R. 18, Defs.' Mem. at 11-12.) This Court disagrees. Drawing all inferences in Plaintiff's favor, it is certainly plausible – particularly, under the amended ADA – that Plaintiff's HIV positive status substantially limits a major life activity: the function of his immune system. Such a conclusion is consistent with the EEOC's proposed regulations to implement the ADAAA which lists HIV as an impairment that will consistently meet the definition of disability. *See* Proposed Rules, Regulations To Implement the Equal Employment Provisions of the Americans with Disabilities Act, As Amended, 74 FR 48431, at *48441 (Sept. 23, 2009) ("Interpreting the definition of disability broadly and without extensive analysis as required under the [ADAAA], some types of impairments will consistently meet the definition of disability. Because of certain characteristics associated with these impairments, the individualized assessment of the limitations on a person can be conducted quickly and easily, and will consistently result in a determination that the person is substantially limited in a major life activity.").

Relying primarily on the decision in *Lee's Log Cabin*, Defendants argue that a substantial limitation of an identifiable major life activity is "an essential basis" to establish a claim for relief

under the ADA.² (*Id.* at 10.) In that case, the Seventh Circuit "decline[d] to adopt" a rule that HIV is a *per se* disability under the ADA.³ *Lee's Log Cabin*, 546 F.3d at 445. However, the court explicitly stated that its decision, which was decided at the summary judgment stage, should not "be read to suggest that the EEOC's complaint failed to state a claim." *Lee's Log Cabin*, 554 F.3d at 1103. The Court finds that the level of pleading which Defendants argue is not required at this stage. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is *plausible* on its face") (emphasis added); *see also EEOC v. Scrub, Inc.* No. 09C4228, 2009 U.S. Dist. LEXIS 99898, *5 (N.D. Ill. Oct. 26, 2009) ("An employment discrimination case must satisfy notice-pleading requirements; specific facts establishing a *prima*

---

² In *Lee's Log Cabin*, the EEOC alleged that the employer violated the ADA by refusing to hire an applicant because she had HIV. 546 F.3d at 440. The Seventh Circuit held that the EEOC's attempt to substitute AIDS for HIV as the basis for the ADA claim "came too late" because the threshold determination of disability "turned on the extent to which [the plaintiff's] impairment limited her major life activities." *Id.* at 444 n.4. The Seventh Circuit determined that "an AIDS suffer's symptoms (and their effect on her major life activities) differ from those of someone who is HIV-positive," and because "the record was silent about the effect of HIV on [plaintiff]'s life activities," summary judgment in favor of the employer was appropriate. *Id.* at 444-45.

³ Other courts, however, have found that as a matter of law, being HIV positive is a *per se* disability under the ADA. *See e.g. Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir. 1998) ("HIV infection is a disability under the [ADA]"); *Doe v. Deer Mountain Day Camp*, 07C5495, 2010 U.S. Dist LEXIS 3265, at *31 (S.D.N.Y. Jan. 13, 2010) ("HIV infection qualifies as a disability under the ADA").

*facie* case of employment discrimination are not required.")[4]

Accordingly, this Court finds that Plaintiff has overcome the "two easy-to-clear hurdles" necessary to survive a motion to dismiss: (1) Defendants have notice of the claims and the grounds on which they rest; and (2) the allegations suggest that Plaintiff has a right to relief. *See Tamayo*, 526 F.3d at 1084. Defendants' motion to dismiss Plaintiff's first claim is therefore denied.

### B. Count II - Impermissible Medical Inquiry

In Count II, Plaintiff alleges that the questions posed by Simmons on July 15, 2009, "constituted prohibited inquires in violation of the ADA." (R. 1, Compl. ¶ 26.) The ADA prohibits "inquiries of an employee as to whether [an] employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4). Here, Plaintiff

---

[4] Further, although Plaintiff does not argue it in his brief, the complaint also establishes a disability under the third definition set forth by the ADA because he was regarded as having an impairment. (*See* R. 1, Compl.) "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Here, Plaintiff alleges that when he told Simmons that he was HIV positive, Simmons asked "how [Plaintiff] could ever perform his job with his HIV positive condition and how he could continue to work with a terminal illness." (R. 1, Compl. ¶¶ 14-16.) In addition, Simmons allegedly told Plaintiff that "a General Manger needs to be respected by the employees and have the ability to lead" and that Simmons "did not know how [Plaintiff] could lead if the employees knew about his condition." (*Id.* ¶ 17.) The next day, Plaintiff alleges that he was terminated. (*Id.* ¶ 19.) This Court finds that such allegations are sufficient to plausibly suggest that Plaintiff was terminated because Defendants regarded his HIV positive status as an impairment.

alleges that Simmons demanded to know whether "something medical [was] going on" and "continued to insist there was something physical or mental that was affecting [Plaintiff]." (R. 1, Compl. ¶¶ 13, 14.) Plaintiff claims that based on this questioning, he was "compelled to tell Simmons that he was HIV positive." (*Id.* ¶ 14.) Further, Simmons allegedly asked Plaintiff about his prognosis and what would happen if his T-cell count fell below 200. (*Id.* ¶ 15.) Such questioning constitutes an inquiry as to whether Plaintiff had a disability and the nature and severity of the disability, and is thus prohibited by the ADA.[5] *See* 42 U.S.C. § 12112(d)(4); *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 565 (7th Cir. 2009).

Nevertheless, Defendants argue that after Plaintiff disclosed his HIV positive status, they were "entitled to ask questions about the stage to which the virus had progressed because it related to [Plaintiff's] possible fitness to work both presently and in the future," and that such questioning was "job-related and consistent with business necessity." (R. 18, Defs.' Mem. at 9.) Again, Plaintiff alleges that he was "compelled to tell Simmons that he was HIV positive," and disclosed this information only after an impermissible inquiry under the ADA. (R. 1, Compl. ¶ 14.) Further, Plaintiff's allegation that he repeatedly insisted that nothing (including his HIV status) affected his ability to perform his duties directly rebuts Defendants' assertion that the

---

[5] Defendants argue that Simmons' alleged use of the conditional "if" when initiating his questions signals that Plaintiff's medical problems were not the exclusive subject matter of the questioning. (R. 24, Defs.' Reply at 9 n.5.) The EEOC guidelines, however, indicate that questions that are *likely* to elicit information regarding a disability are prohibited under the ADA. *See* R. 17, Pl.'s Ex. 3, "Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees Under the ADA" at 3 (emphasis added). Accordingly, it is of no concern that such questioning could also elicit information regarding non-disability related issues.

10

questioning was necessary to discern whether Plaintiff could "cope with the demands and responsibilities of his job." (*See id.* ¶¶ 13-14; R. 18, Defs.' Mem. at 9.)

Thus, Plaintiff has sufficiently pled a claim for an impermissible inquiry under the ADA and Defendants' motion to dismiss on this basis is denied.

## II. State Law Claim

Finally, in Count III, Plaintiff alleges that Defendants' invaded his privacy by intruding upon his seclusion in violation of Illinois law. (R. 1, Compl. ¶¶ 28-33.) Intrusion upon the seclusion of another is one of four torts based on an invasion of privacy. *See Duncan v. Peterson*, 835 N.E.2d 411, 421 (Ill. App. Ct. 2005). While the Illinois Supreme Court has not explicitly recognized the tort of intrusion upon the seclusion of another, all of the Illinois Appellate Courts have recognized such a tort. *See Burns v. Masterbrand Cabinets, Inc.*, 874 N.E.2d 72, 77 (Ill. App. Ct. 2007) (Fourth District); *Johnson v. K Mart Corp.*, 723 N.E.2d 1192, 1196 (Ill. App. Ct. 2000) (First District); *Benitez v. KFC Nat'l Mgmt. Co.*, 714 N.E.2d 1002, 1033-34 (Ill. App. Ct. 1999) (Second District); *Davis v. Temple*, 673 N.E.2d 737, 744 (Ill. App. Ct. 1996) (Fifth District); *Melvin v. Burling*, 490 N.E.2d 1011, 1013 (Ill. App. Ct. 1986) (Third District); *see also Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997) (where the state supreme courts have not ruled on an issue, decisions of state appellate courts control).

Liability under the tort of intrusion upon the seclusion of another "depends upon some type of highly offensive prying into the physical boundaries or affairs of another person." *Lovgren v. Citizens First Nat'l Bank*, 534 N.E.2d 987, 989 (Ill. 1989) (citation omitted). Thus, in

order to state a claim, the plaintiff must establish the following elements: "(1) an unauthorized intrusion or prying into the plaintiff's seclusion, (2) the intrusion must be offensive or objectionable to a reasonable man, (3) the matter upon which the intrusion occurs must be private, and (4) the intrusion causes anguish and suffering." *Burns,* 874 N.E.2d at 77. Defendants argue that Plaintiff's allegations do not satisfy the elements necessary for this claim. (R. 18, Defs.' Mem. at 3-8.)

To begin, Defendants claim that Plaintiff "disclosed his condition as HIV [positive], without objecting or otherwise invoking any claim to confidentiality." (*Id.* at 7-8.) Plaintiff, however, argues that the complaint illustrates that "Simmons would not take no for an answer," and therefore "[i]t cannot be said that [he] authorized the disclosure of his medical condition." (R. 21, Pl.'s Resp. at 8.) However, even if the disclosure of Plaintiff's HIV status was not voluntary, Defendants' questioning does not give rise to the level of intrusion actionable under the tort. *Compare Karracker v. Rent-A-Center, Inc.,* 239 F. Supp. 2d 828, 838 (C.D. Ill. 2003) (finding that plaintiffs' allegations of employers inquiries about personal information including sexual preferences and orientation, religious beliefs and practices and medical conditions were insufficient for a claim of intrusion upon the seclusion of another under Illinois law), *and Kelly v. Mercoid Corp.,* 776 F. Supp. 1246, 1257 (N.D. Ill. 1991) (requiring an employee to submit to urinalysis testing does not constitute an unreasonable intrusion into the seclusion of another), *with Benitez,* 714 N.E.2d at 1006 ("[e]xamples of actionable intrusion upon seclusion would include invading someone's home, illegally searching someone's shopping bag in a store,

eavesdropping by wiretapping, peering into the windows of a private home, or making persistent and unwanted telephone calls"). Therefore, Simmons' questioning fails to establish a sufficient "prying" into a zone of solitude necessary to establish a claim under the tort. Accordingly, Defendants' motion to dismiss on this basis is granted.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (R. 13) is GRANTED in part and DENIED in part. Counts I and II of Plaintiff's complaint remain, but Count III is dismissed. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear for a status on May 11, 2010 at 9:45 a.m.

Entered: /s/ Ruben Castillo

**Judge Ruben Castillo**
**United States District Court**

**Dated: April 12, 2010**